UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MANUEL SALAZAR,

    Plaintiff,

vs.

PRINCIPAL LIFE INSURANCE
COMPANY,

    Defendant.
_____)

## COMPLAINT

The Plaintiff, MANUEL SALAZAR (hereinafter "SALAZAR" or "Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, PRINCIPAL LIFE INSURANCE COMPANY (hereinafter "PRINCIPAL") and alleges:

### JURISDICTION, VENUE AND PARTIES

1. This action arises under ERISA or the Employee Retirement Income Security Act of 1974, 29 USC §§ 1001 et seq., and more particularly 29 USC §1132 (a) (1) (B) thereof.  This Court has jurisdiction under 29 USC § 1132(f), which grants to the federal court concurrent jurisdiction to determine claims under 29 USC §§ 1001 et seq. SALAZAR brings this action to recover long-term disability ("LTD") benefits due to him under the terms of an employee welfare benefit plan, to enforce his rights under the plan and to clarify his rights to benefits under the terms of the plan.

2. SALAZAR was at all times relevant a citizen of the United States of America and in all respects sui juris.

3. PRINCIPAL is a corporation with its principal place of business in the State of Iowa, authorized to transact and is transacting business in the Southern District of Florida and can be found in the Southern District of Florida.

4. Venue is proper in this District under 29 USC 1132 (e)(2), in that the defendant, PRINCIPAL, is authorized to and is doing business within the Southern District of Florida.

## COUNT I (LTD Plan)

## CLAIM FOR BENEFITS, ENFORCEMENT AND CLARIFICATION OF RIGHTS, PREJUDGMENT AND POSTJUDGMENT INTEREST AND ATTORNEYS' FEES AND COSTS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

5. SALAZAR was at all times material an employee of The Ohio Moulding Corp. ("OHIO MOULDING").

6. SALAZAR was at all times material a plan participant under the OHIO MOULDING Long Term Disability Plan, Group Policy Number GLT P48427 (the "LTD Plan") which is established by OHIO MOULDING and pursuant to which SALAZAR is entitled to benefits. A true and correct copy of the LTD Plan has been attached hereto as Exhibit "A."

7. The LTD Plan is an employee welfare benefit plan within the meaning of Title 29, USC § 1002 and regulated by ERISA.

8. PRINCIPAL is the insurer of benefits under the LTD Plan and was appointed by OHIO MOULDING, the Plan Administrator, as the named fiduciary for deciding claims for benefits under the LTD Plan, and for deciding any appeals of denied claims.

9. As the decision maker and payor of plan benefits, PRINCIPAL administered the claim with a conflict of interest and the bias this created affected the claims determination. As such, PRINCIPAL is not entitled to a deferential standard of review.

10. PRINCIPAL is the Fiduciary charged with making benefit determinations under the LTD Plan, including the determinations made on SALAZAR'S claim at issue.

11. Pursuant to the terms and conditions of the LTD Plan, SALAZAR is entitled to LTD benefits for the duration of his disability, for so long as he remains disabled as required under the terms of the LTD Plan.

12. According to the LTD Plan Disability is defined as:

**Residual Disability; Residually Disabled**

A Member who is not working for wage or profit and solely and directly because of sickness or injury:

a. During the Elimination Period and the two year period immediately following the Elimination Period:
   1. Is unable to perform the majority of the material duties of his or her normal occupation; and
   2. Is unable to earn more than 80% of his or her Indexed Predisability Earnings; and
b. After completing the Elimination Period and the two year period immediately following the Elimination Period:
   1. Is unable to perform the majority of the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training, or experience; and
   2. Is unable to earn more than 80% of his or her Indexed Predisability Earnings.

**Total Disability; Totally Disabled**

A Member who is not working for wage or profit and solely and directly because of sickness or injury:
a. During the Elimination Period and the two year period immediately following the Elimination Period, is unable to perform the majority of the material duties of his or her normal occupation; and
b. After completing the Elimination Period and the two year period immediately

following the Elimination Period, is unable to perform the majority of the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training, or experience.

13. At all relevant times, SALAZAR has complied with all conditions precedent and exhausted all required administrative remedies under the LTD Plan.

14. Since approximately October 17, 2004, SALAZAR has been disabled under the terms of the LTD Plan.

15. Since on or about October 17, 2004, due to his disability, SALAZAR has been unable to perform the majority of the material duties of his normal occupation and unable to earn more than 80% of his indexed predisability earnings.

16. Since at least October 17, 2004, due to his disability, SALAZAR has been unable to perform the majority of the material duties of any occupation for which he is or may reasonably become qualified based on education, training or experience and unable to earn more than 80% of his indexed predisability earnings.

17. At all relevant times, SALAZAR was a Covered Person under the LTD Plan.

18. Shortly after becoming disabled under the terms of the plan, SALAZAR made a claim to PRINCIPAL for disability benefits which PRINCIPAL initially approved and paid through March 30, 2015.

19. While on claim for LTD benefits, PRINCIPAL in a letter dated March 31, 2015, terminated SALAZAR'S claim beyond March 30, 2015 contending SALAZAR was not disabled.

20. SALAZAR properly appealed PRINCIPAL'S adverse determination.

21. In a letter dated November 19, 2015 PRINCIPAL affirmed its adverse determination and advised SALAZAR that he had the right to file a civil action.

22. From March 31, 2015 to the present date, SALAZAR has not received benefits owed to him under the LTD Plan, despite SALAZAR'S right to these benefits.

23. PRINCIPAL has refused to pay SALAZAR LTD benefits since March 31, 2015.

24. At all relevant times, PRINCIPAL was the payer of benefits.

25. At all relevant times, PRINCIPAL was the "Insurance Company" identified throughout the LTD Plan.

26. At all relevant times, PRINCIPAL was appointed by OHIO MOULDING, the Plan Administrator, as the named fiduciary for deciding claims for benefits under the LTD Plan, and for deciding any appeals of denied claims.

27. At all relevant times, SALAZAR has been and remains Disabled and entitled to LTD benefits from PRINCIPAL under the terms of the LTD Plan.

28. Pursuant to 29 U.S.C. §1132(a)(1)(B), SALAZAR, as a participant under the LTD Plan, is entitled to sue for judicial determination and enforcement of benefits.

29. SALAZAR has no other adequate remedy at law to address the injuries he has suffered and will continue to suffer as a result of PRINCIPAL'S failure to pay him disability benefits.

30. SALAZAR has exhausted all administrative remedies under the LTD Plan.

31. Defendant breached the LTD Plan and violated ERISA in the following respects:

    (a)    Failing to pay LTD benefit payments to SALAZAR at a time when PRINCIPAL knew, or should have known, that SALAZAR was entitled to those benefits under the terms of the LTD Plan, as SALAZAR was disabled and unable to work and therefore entitled to benefits.

    (b) Failing to provide a prompt and reasonable explanation of the basis relied upon under the terms of the LTD Plan documents, in relation to the applicable facts and LTD Plan provisions, for the termination of SALAZAR'S claim for LTD benefits;

    (c) After SALAZAR'S claim was terminated in whole or in part, PRINCIPAL failed to adequately describe to SALAZAR any additional material or information necessary for SALAZAR to perfect his claim along with an explanation of why such material is or was necessary.

    (d) PRINCIPAL failed to properly and adequately investigate the merits of SALAZAR'S disability claim and failed to provide a full and fair review of SALAZAR'S claim.

32. SALAZAR believes and thereon alleges that PRINCIPAL wrongfully terminated his claim for disability benefits under the LTD Plan by other acts or omissions of which SALAZAR is presently unaware, but which may be discovered in this future litigation and which SALAZAR will immediately make PRINCIPAL aware of once said acts or omissions are discovered by SALAZAR.

33. Following the termination of benefits under the LTD Plan, SALAZAR exhausted all administrative remedies required under ERISA, and SALAZAR has performed all duties and obligations on his part to be performed under the LTD Plan.

34. As a proximate result of the aforementioned wrongful conduct of PRINCIPAL, SALAZAR has damages for loss of disability benefits in a total sum to be shown at the time of trial.

35. As a further direct and proximate result of this improper determination regarding

SALAZAR'S claim for benefits, SALAZAR, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), SALAZAR is entitled to have such fees and costs paid by PRINCIPAL.

36. The wrongful conduct of PRINCIPAL has created uncertainty where none should exist; therefore, SALAZAR is entitled to enforce his rights under the terms of the LTD Plan and to clarify his right to future benefits under the terms of the LTD Plan.

## **REQUEST FOR RELIEF**

WHEREFORE, MANUEL SALAZAR prays for relief against PRINCIPAL LIFE INSURANCE COMPANY as follows:

1. Payment of disability benefits due Plaintiff;

2. An order declaring that Plaintiff is entitled to immediate reinstatement to the LTD Plan, with all ancillary benefits to which he is entitled by virtue of his disability, and that benefits are to continue to be paid under the LTD Plan for so long as Plaintiff remains disabled under the terms of the LTD Plan;

3. In the alternative to the relief sought in paragraphs 1 and 2, an order remanding Plaintiff's claim to the claims administrator to the extent any new facts or submissions are to be considered;

4. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

5. Payment of prejudgment and postjudgment interest as allowed for under ERISA; and

6. Such other and further relief as this Court deems just and proper.

## COUNT II (Life Policy)

## CLAIM FOR WAIVER OF PREMIUM, ENFORCEMENT AND CLARIFICATION OF RIGHTS, PREJUDGMENT AND POSTJUDGMENT INTEREST AND ATTORNEYS' FEES AND COST PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

37. SALAZAR incorporates by reference all preceding paragraphs as though fully set forth herein.

38. At all times relevant, SALAZAR was an employee or former employee of OHIO MOULDING and a plan participant under the terms and conditions of the OHIO MOULDING Life Insurance Policy, Policy Number P48427 (the "Life Policy"). A true and correct copy of the Life Policy has been attached hereto as Exhibit "A."

39. PRINCIPAL is the provider of coverage under the Life Policy and the Fiduciary charged with making coverage determinations under the Life Policy, including the determinations made on SALAZAR'S claim at issue.

40. As the decision maker and payer of Life Policy benefits, and waiver of premium benefits under the Life Policy, PRINCIPAL administered the claim with a conflict of interest and the bias this created affected the claims determination. As such, PRINCIPAL is not entitled to a deferential standard of review.

41. Pursuant to the terms and conditions of the Life Policy, SALAZAR is entitled to a continuation of life insurance by means of waiving the premiums for the duration of his disability, for so long as he remains disabled as required under the terms of the Life Policy.

42. According to the Life Policy,

**Total Disability, Totally Disabled**

A Member's inability, as determined by The Principal, due to sickness or injury to perform the majority of the material duties of any occupation for which he or she is or may reasonably become qualified based on education, training, or experience.

a. **Coverage Qualifications**

To be qualified for Coverage During Disability, a Member must:

1. become Totally Disabled while insured for Member Life Insurance; and

2. become Totally Disabled prior to the earlier of retirement or attainment of age 60; and

3. remain Totally Disabled continuously; and

4. be under the regular care and attendance of a Physician; and

5. send proof of Total Disability to The Principal when required; and

6. submit to Physicians' examinations when required; and

7. return to The Principal, without claim, any individual policy issued under his or her Individual Purchase Rights as described in PART III, Section F, Article 1. Upon return of such policy, The Principal will refund premiums paid, less dividends and less any outstanding policy loan balance.

43. At all relevant times, SALAZAR has complied with all conditions precedent and exhausted all required administrative remedies under the Life Policy.

44. Since approximately October 17, 2004, SALAZAR has been disabled under the term of the Life Policy.

45. Since approximately October 17, 2004, due to his disability, SALAZAR has been unable to perform the majority of the material duties of any occupation for which he is or may reasonably become qualified based on education, training or experience.

46. At all relevant times, SALAZAR was a covered person under the Life Policy.

47. Shortly after becoming disabled under the terms of the Life Policy SALAZAR made a claim to PRINCIPAL for Waiver of Premium benefits, which PRINCIPAL initially approved and provided through March 30, 2015.

48. On or about March 31, 2015, PRINCIPAL terminated SALAZAR'S claim for Waiver of Premium contending SALAZAR was not disabled.

49. SALAZAR properly appealed PRINCIPAL'S adverse determination.

50. In a letter dated November 19, 2015, PRINCIPAL affirmed its adverse determination and advised SALAZAR that he has the right to file a civil action.

51. From March 31, 2015 to the present date, PRINCIPAL has refused to waive premiums on the Life Policy, despite SALAZAR'S right to these benefits.

52. At all relevant times, PRINCIPAL was the provider of benefits.

53. At all relevant times, PRINCIPAL was the "Insurance Company" identified throughout the Life Policy.

54. At all relevant times, PRINCIPAL was appointed by OHIO MOULDING, the Plan Administrator, as the named fiduciary for deciding claims for benefits under the Life Policy, and for deciding any appeals of denied claims.

55. At all relevant times, SALAZAR has been and remains Disabled and entitled to waiver of premium benefits under the terms of the Life Policy.

56. Pursuant to 29 U.S.C. §1132(a)(1)(B), SALAZAR, as a participant under the Life Policy, is entitled to sue for judicial determination and enforcement of benefits.

57. SALAZAR has no other adequate remedy at law to address the injuries he has suffered and will continue to suffer as a result of PRINCIPAL'S failure to provide SALAZAR with a waiver of premium.

58. SALAZAR has exhausted all administrative remedies under the Life Policy.

59. As PRINCIPAL had the sole discretion to determine entitlement to waiver of premium under the Life Policy, PRINCIPAL breached the Plan and violated ERISA in the following respects:

    a. Failing to provide waiver of premium to SALAZAR at a time when PRINCIPAL knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Life Policy, as SALAZAR was disabled and unable to work and therefore entitled to waiver of premium.

    b. After SALAZAR'S claim was denied in whole or in part, PRINCIPAL failed to adequately describe to SALAZAR any additional material or information necessary for SALAZAR to perfect his claim along with an explanation of why such material is or was necessary.

    c. PRINCIPAL failed to properly and adequately investigate the merits of SALAZAR'S claim and failed to provide a full and fair review of SALAZAR'S claim.

60. SALAZAR believes and thereon alleges that PRINCIPAL wrongfully denied his claim for waiver of premium under the Life Policy by other acts or omissions of which SALAZAR is presently unaware, but which may be discovered in this future

litigation and which SALAZAR will immediately make PRINCIPAL aware of once said acts or omissions are discovered by SALAZAR.

61. Following the denial of his claim under the Plan, SALAZAR exhausted all administrative remedies required under ERISA, and SALAZAR has performed all duties and obligations on his part to be performed under the Plan.

62. As a proximate result of the aforementioned wrongful conduct of the Defendant, SALAZAR has damages for loss of coverage in a total sum to be shown at the time of trial.

63. As a further direct and proximate result of this improper determination regarding SALAZAR'S claim for waiver of premium, SALAZAR, in pursuing this action, has been required to incur attorneys' costs and fees. Pursuant to 29 U.S.C. § 1132(g)(1), SALAZAR is entitled to have such fees and costs paid by PRINCIPAL.

64. The wrongful conduct of PRINCIPAL has created uncertainty where none should exist; therefore, SALAZAR is entitled to enforce his rights under the terms of the Plan and to clarify his right to future coverage under the terms of the Life Policy.

## REQUEST FOR RELIEF

WHEREFORE, MANUEL SALAZAR prays for relief against PRINCIPAL LIFE INSURANCE COMPANY as follows:

1. An order declaring that Plaintiff is entitled to immediate reinstatement to the Life Policy, with all ancillary benefits to which he is entitled by virtue of his disability, and that life insurance coverage is to continue to be provided under the Life Policy by means of a waiver of premium for so long as Plaintiff remains disabled under the terms of the Life Policy;

2. In the alternative to the relief sought in paragraph 1, an order remanding Plaintiff's claim to the claims administrator to the extent any new facts or submissions are to be considered;

3. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

4. Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

5. Such other and further relief as this Court deems just and proper.

DATED: April 8, 2016

        ATTORNEYS DELL AND SCHAEFER, CHARTERED
Attorneys for Plaintiff
2404 Hollywood Boulevard
Hollywood, FL  33020
Phone: (954) 620-8300
Fax: (954) 922-6864

   /s/ *Victor Peña*
VICTOR PEÑA, ESQUIRE
Florida Bar No.: 0108094
Email: victor@diattorney.com
GREGORY MICHAEL DELL, ESQUIRE
Florida Bar No.: 299560
Email: gdell@diattorney.com